IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JASON H.,[1]

      **Plaintiff,**

v.

      Civil Action 3:24-cv-130
      Judge Michael J. Newman
      Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Jason H., brings this action under 42 U.S.C. § 405(g) for review of a decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Supplemental Security Income benefits ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 7), the Commissioner's Memorandum in Opposition, (ECF No. 8), Plaintiff's Reply (ECF No. 9), and the administrative record (ECF No. 5). For the following reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (ECF No. 7) and **AFFIRM** the Commissioner's decision.

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

## I. BACKGROUND

Plaintiff applied for SSI on December 1, 2021, alleging disability beginning June 27, 2019, due to lumbar pain, bulging discs at L4-L5, severe depression, COPD, emphysema, IBS, anxiety, sleep apnea, ambulates with prescribed cane/walker.  (R. at 207-16, 226.)  Plaintiff's application was denied initially in June 2022, and upon reconsideration in September 2022.  (R. at 95-117, 123-34.)  On March 21, 2023, Plaintiff, who was represented by counsel, appeared and testified telephonically at a hearing held by an administrative law judge.  (R. at 43-70.)  On April 19, 2023, Gregory M. Beatty (the "ALJ") issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 15-42.)  The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-6.)

## II. RELEVANT RECORD EVIDENCE

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports, and testimony as to his conditions and resulting limitations. Given the claimed errors raised by Plaintiff, rather than summarizing that information here, the Court will refer and cite to it as necessary in the discussion of the parties' arguments below.

### III. ADMINISTRATIVE DECISION

On April 19, 2023, the ALJ issued the non-disability determination. (R. at 15-42.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff has not engaged in substantially gainful activity since December 1, 2021, the application date. (R. at 20.) He found that Plaintiff had the following severe impairments: lumbar spondylosis and spondylolisthesis; gout; carpal tunnel syndrome; alcoholic hepatitis and cirrhosis; essential hypertension; COPD; obstructive sleep apnea; obesity; a depressive disorder; an anxiety disorder; and an alcohol use disorder. (R. at 20-21.) He concluded, however, that Plaintiff's impairments are not of a severity that medically meets or equals the severity of any impairments listed in Part B of Appendix 1 to Subpart P, 20 C.F.R. Part 404. (R. at 21.)

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Before proceeding to step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC"), in pertinent part, as follows:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) with no climbing of ladders, ropes, or scaffolds and occasional climbing of ramps and stairs. He is able to frequently balance and crouch with occasional stooping, kneeling, and crawling. He is able to frequently reach overhead, reach in all other directions, and handle items with the bilateral upper extremities. He is able to frequently push and pull with the bilateral upper and lower extremities, and he is able to frequently use foot and hand controls. He is limited to no work at unprotected heights, around moving mechanical parts, or operating a motor vehicle. He is able to tolerate frequent exposure to vibration, humidity, wetness, dusts, odors, fumes, and pulmonary irritants. He is able to perform simple, routine, and repetitive tasks but not at a production-rate pace.

(R. at 24.)

At step four, the ALJ determined that Plaintiff is unable to perform his past relevant work as a customer service representative or a sales clerk/store keeper. (R. at 36.) At step five, relying on the VE's testimony, the ALJ concluded that Plaintiff can perform jobs that exist in significant numbers in the national economy such as an inspector, bench assembler, and packager. (R. at 37-38.) The ALJ therefore concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since December 1, 2021, the date the application was filed. (R. at 38.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. §

405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 119 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

V. ANALYSIS

Plaintiff raises two issues in his statement of errors: (1) the ALJ failed to incorporate Plaintiff's use of assistive devices into the RFC determination; and (2) the ALJ failed to incorporate functional limitations for grasping, fingering, feeling, or handling in the RFC

5

determination. (ECF No. 7 at 9-14.) The Undersigned disagrees and finds that the ALJ's decision is supported by substantial evidence.

### A. Plaintiff's Use of Assistive Devices

Plaintiff argues that the ALJ erred in failing to find his use of a walker or a cane to be medically necessary. In support of this argument, Plaintiff claims that he testified at the hearing to his use of a walker "pretty much all the time." (ECF No. 7 at 7 citing R. at 56-57.) According to Plaintiff, in 2018, prior to the relevant time period here, he was prescribed a wide walker with a seat, a cane, and a wide potty chair due to chronic back pain. (*Id*. citing R. at 675.) Further, Plaintiff explains that, in December 2021, he was prescribed a "large walker" to assist with ambulation. (*Id.* citing R. at 338.) Plaintiff contends that the medical record repeatedly confirms his compliance with that latter prescription. (*Id.* at 8 citing R. at 316, 322, 337, 525, 547, 553, 568, 573, 578, 592, 604, 616, 634, 647, 663, 665, 989, 994.) Further, Plaintiff cites various medical notes in the record indicating his use of a cane on several occasions. (*Id.* citing R. at 492, 864, 394-395, 676.) In Plaintiff's view, the ALJ relied on one physical therapy note from the entire medical record which indicated that Plaintiff was not using an assistive device as the basis for his conclusion that such devices were not medically necessary. Plaintiff contends that this lone record cannot constitute substantial evidence.

In response, the Commissioner asserts that the ALJ noted Plaintiff's use of these assistive devices but properly concluded that such use was not medically necessary. With respect to Plaintiff's use of a walker, the Commissioner points to the ALJ's finding that "none of [Plaintiff's] providers reported observing him using it in their physical examinations." (ECF No.

6

8 at 9 citing R. at 29.) Further, the Commissioner relies on the ALJ's discussion of instances where Plaintiff was not reported to be using a cane and the ALJ's conclusions regarding Plaintiff's strength and balance based on the consideration of the record as a whole.

In reply, Plaintiff contends that the ALJ's RFC determination minimally should have incorporated the occasional use of a cane. Further, Plaintiff asserts that the ALJ's conclusion that Plaintiff could perform some activities of daily living is not a sufficient basis for the conclusion that he would be able to perform full-time work.

The Court's analysis begins with Social Security Regulation ("SSR") 96-9p which provides guidance for the evaluation of the use of any hand-held device and the impact of that use upon sedentary work. SSR 96-9p states, in relevant part:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).

The ALJ need not incorporate use of a cane or other hand-held assistive device into the RFC unless that device is medically required, in which case the device is considered a limitation on a claimant's ability to work. *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002); *Baker v. Comm'r. of Soc. Sec.,* No. 2:19-cv-4323, 2020 WL 2213893, at *7 (S.D. Ohio May 7, 2020). An ALJ's conclusion that a cane or other assistive device is not medically necessary can

be error, however, when: "(i) the claimant has been prescribed an assistive device; (ii) the ALJ did not include the use of the device in the RFC assessment; and (iii) did not provide an explanation for the omission." *Austin v. Comm'r of Soc. Sec.*, 2020 WL 9460505, at *13 (N.D. Ohio July 7, 2020).

It is well-settled, that a prescription alone is not sufficient to establish that the assistive device was medically necessary. *Barnes v. Comm'r of Soc. Sec.,* No. 5:21-CV-01688-JDA, 2023 WL 2988346, at *8 (N.D. Ohio Mar. 22, 2023) (citing *Gaskins v. Comm'r of Soc. Sec.*, No. 3:20-CV01063-JGC, 2021 WL 3174792, at *11 (N.D. Ohio June 15, 2021), *report and recommendation adopted*, 2021 WL 3164992)). Further, "a claimant's testimony about his use of an assistive device does not qualify as medical documentation establishing the need for a cane." *Drew v. Comm'r of Soc. Sec. Admin.,* No. 1:23-CV-01353-DAC, 2024 WL 2294784, at *10 (N.D. Ohio May 21, 2024) (citing *White v. Saul,* No. 1:20-cv-236, 2021 WL 1145463, at *8 (N.D. Ohio Mar. 25, 2021) ("Numerous court decisions have considered a plaintiff's testimony regarding the use of assistive devices, but found it unavailable when the record lacked supporting medical documentation demonstrating the requirement for such a device.") (collecting cases)).

Further, "courts within this circuit have noted the paramount finding in cases involving assistive devices is documentation describing the circumstances for which it is needed," "not just notations relating to the continued use of an assistive device." *Drew,* 2024 WL 2294784, at *10 (N.D. Ohio May 21, 2024) (quotations omitted). In short, to be medically necessary, the record must reflect "more than just a subjective desire on the part of the plaintiff" to use an assistive device. *Crawley v. Comm'r of Soc. Sec.,* No. 1:24-CV-1760, 2025 WL 1442562, at *14 (N.D.

Ohio May 20, 2025) (citation omitted). "And there must be medical documentation describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." *Id.* (internal quotation omitted); *see also Golden v. Berryhill,* No. 1:18-cv-636, 2018 WL 7079506, at *19 (N.D. Ohio Dec. 12, 2018) ("a cane prescription [that] does not indicate 'the circumstances for which [the cane] is needed,' . . . does not fulfil the requirements under SSR 96-9p"), *report and recommendation adopted*, 2019 WL 415250 (N.D. Ohio Feb. 1, 2019).

With the above in mind, the Court considers the ALJ's decision. As the Commissioner notes, the ALJ directly addressed Plaintiff's use of assistive devices, discussing as follows:

> While a walker was prescribed in 2018, none of [Plaintiff's] providers reported observing him using it in their physical examinations (Exhibits B1F-B10F). Thus, a walker is not medically necessary. Use of a cane for balance was only occasionally noted on examination, and there was also at least one physical therapy appointment where his provider specifically stated he was not using an assistive device (Exhibits B1F-B10F). Combined with his relatively good lower extremity strength and subjective reports of fair balance, the only occasional notations of use of a cane on examinations demonstrates it is not medically necessary despite some reports of an ataxic gait, and limiting him to sedentary work activity fully addresses gait concerns (Exhibits B1F-B10F). Strength, sensation, and range of motion findings as noted above, along with the reported activities discussed below, demonstrate that [Plaintiff] had postural and manipulative abilities consistent with the restrictions in the above residual functional capacity.

(R. at 29.)

Later, in his decision, the ALJ added:

> Any opinion intended by the 2018 handwritten prescription for use of a wide walker, a wide potty chair, and a cane is not persuasive (e.g. Exhibit B7F/130). None of his providers reported observing [Plaintiff] using a walker in their physical examinations (Exhibits B1F-B10F). Thus, a walker is not medically necessary. Use of a cane for balance was only occasionally noted on examination, and there was also at least one physical therapy appointment where his provider specifically stated

9

> [Plaintiff] was not using an assistive device (Exhibits B1F-B10F). Combined with his relatively good strength and subjective reports of fair balance, the only occasional notations of use of a cane on examinations demonstrates it is not medically necessary despite some reports of an ataxic gait (Exhibits B1F-B10F). As such, any opinion intended by the 2018 handwritten prescriptions are not persuasive.

(R. at 36.)

Further, in finding mostly persuasive the opinion of Dr. W. Scott Bolz, a non-examining physician with the Division of Disability Determination ("DDD") at the reconsideration level, the ALJ summarized that opinion in the following way:

> … The opinion of Dr. Bolz is generally supported by and consistent with the record, which demonstrates adequate physical functioning despite [Plaintiff's] conservative treatment (Exhibits B1F-B10F). [Plaintiff] generally presents with adequate strength that was no more than slightly reduced, and he often has adequate range of motion and sensation (Exhibits B1F-B10F). Such findings, along with his self-reported lifting abilities, are consistent with an ability to perform light lifting, mostly occasional to frequent postural activities, and frequent handling, reaching, pushing, and pulling as opined (Exhibits B3E, B7E, and B1F-B10F). Nevertheless, when giving [Plaintiff] the full benefit of the doubt with respect to his subjective complaints, sedentary lifting was appropriate. Limiting [Plaintiff] to standing and/or walking two hours fully accommodates the notations of ataxic gait and occasional use of a cane (Exhibits B1F-B10F). The occasional observations of use of a cane, combined with his strength and self-reports of fair balance, demonstrate that an assistive device is not medically necessary as opined (Exhibits B1F-B10F).
> ….

(R. at 34.) In his opinion, Dr. Bolz had stated that "[Plaintiff] reported that he need[s] a cane/walker – while he did use one at the CE, it was not medically necessary and exam showed that mobility limits were due in part to obesity rather than spine." (R. at 110.)[3]

---

[3] As the ALJ also noted, Dr. Rohini Mendonca, a non-examining physician with the DDD at the initial level reached the same conclusion regarding Plaintiff's alleged use of a cane/walker. (R. at 34 citing R. at 99.)

10

Here, the above excerpt refutes Plaintiff's characterization of the ALJ's analysis as relying solely on "one physical therapy appointment." In arguing that his use of assistive devices is supported by more than just his desire, Plaintiff muddles the distinction between his use of a walker and his use of a cane in the record. Taking them individually, his argument that his walker was medically necessary is premised on three points: (1) his prescription for a walker; (2) his testimony regarding his use of a walker; and (3) physician notes reflecting his use of a walker. None of these points, however, supports the position that Plaintiff's use of a walker was medically necessary. The Court takes each point in turn.

As considered by the ALJ, the record contains what appears to be a prescription dated August 9, 2018, for a wide walker with seat, a wide potty chair, and a cane. (R. at 675.) Further, as Plaintiff cites, counseling records from an office visit with Rocking Horse Community Health Center dated February 28, 2022, indicate that, on December 15, 2021, he was prescribed a walker, to assist with ambulation, with a notation stating "Needs large walker, Wt: 312 lb BMI 47." (R. at 338.) Other records from Rocking Horse, including those from telehealth appointments, reflect the same, with many indicating that Plaintiff is "taking as directed" without elaboration. (*See, e.g.,* R. at 316, 322.) Notably, however, Plaintiff provides no citation to the actual 2021 prescription anywhere in the medical record. Moreover, even if he did, a prescription alone is not sufficient to establish that the walker was medically necessary. *Barnes* 2023 WL 2988346, at *8. The same goes for the apparent 2018 prescription. Instead, there must be some description of the circumstances for which a walker is needed or the expected duration of medical necessity. Here, Plaintiff points to no medical record that dictates

11

the specific circumstances under which Plaintiff is to utilize a walker. Indeed, the 2018 prescription completely lacks any specifics. Finally, even assuming a prescription, as discussed more fully below, the ALJ fully explained why he did not include any limitations in the RFC regarding the use of a walker.

As for Plaintiff's testimony regarding the use of a walker, again, the above authority confirms that his statements are insufficient to satisfy the strict documentation requirements of SSR 96-9p. *Drew,* 2024 WL 2294784, at *10; *Barnes* 2023 WL 2988346, at *8. Moreover, the ALJ reasonably relied on Plaintiff's activities of daily living in discounting this testimony and finding Plaintiff demonstrated better physical functioning than that alleged. *Knapp v. Comm'r of Soc. Sec.,* No. 22-2055, 2023 WL 6800153, at *3 (6th Cir. Oct. 16, 2023). As discussed by the ALJ:

> Finally, reported activities throughout the period under review demonstrate better physical and mental functioning than alleged. In March and August 2022, the claimant completed a function report, demonstrating an ability to read, use the hands to write, and follow instructions (Exhibits B3E and B7E). In his March 2022 function report, the claimant acknowledged that he was able to lift twenty pounds (Exhibit B3E/6). He was able to sit for an hour (Exhibit B3E/6). He noted that he spent time researching various topics (Exhibit B3E/2). He indicated that he helped care for his mother and two younger children with some help (Exhibit B3E/2). He did not reminders to take care of his personal needs or grooming or to take medication (Exhibit B3E/2). He was able to prepare simple meals for himself (Exhibit B3E/3). He was able to attend to some chores, including cleaning, dusting, light laundry, getting mail, and vacuuming while in a chair (Exhibit B3E/3). He was able to go out alone (Exhibit B3E/4). He shopped via computer (Exhibit B3E/4). He was able to handle money, including paying bills and counting change (Exhibit B3E/4). He spent time with others, including in person, on the phone, and via email, texting, mail, and video chat, though he indicated he did not spend time with others for pleasure and was primarily setting up appointments (Exhibit B3E/5). April 2022 occupational therapy notes reflect that the claimant was independent in self-care (Exhibit B9F/180). He lived with his mother, and they helped each other as needed (Exhibit B9F/180). Orthopedic notes from that month reflect that he was

> participating in some work activity involving use of a screwdriver (Exhibit B4F/3). May 2022 occupational therapy notes reflect that he was well enough to cut down limbs (Exhibit B9F/143). June 2022 mental health treatment notes indicate that he cooked and cleaned (Exhibit B5F/1). In his August 2022 function report, he noted that he continued to care for his disabled mother, including helping her with the restroom, cleaning her, and getting her meals (Exhibit B7E/1-2). He continued to prepare simple meals, vacuum, and dust (Exhibit B7E/3). He continued to go shopping monthly on the computer, and he was still able to handle money, including paying bills and counting change (Exhibit B7E/4). He continued to look up information (Exhibit B7E/5). He was still able to lift fifteen to twenty pounds (Exhibit B7E/6). Mental health treatment notes from that month include reports that increased activity contributed to his weight loss (Exhibit B7F/95). October 2022 primary care notes indicate that he was exercising, though loose skin in the abdomen sometimes made it difficult (Exhibit B7F/111). November 2022 primary care notes reflect that he was doing "very well" with activities of daily living since losing weight (Exhibit B7F/118). He testified that he lived with his disabled mother and two children aged thirteen and fourteen, and they help his mother out. He indicated that he was able to drive, and he went to the grocery store the day before the hearing. He also attempted to schedule appointments for his children. As such, his reported activities demonstrate better physical and mental functioning than alleged, and the physical and mental abilities necessary for the activities described are consistent with the limitations in the above residual functional capacity.

(R. at 33.) This discussion, in addition to the excerpts above, also confirms that, to the extent Plaintiff was prescribed a walker, the ALJ explained his basis for choosing not to include any limitation relating to it in the RFC.

Finally, and again in the absence of any specifics regarding Plaintiff's use of a walker, physician notes reflecting Plaintiff's use of a walker are insufficient to demonstrate the ALJ's error. *Drew,* 2024 WL 2294784, at *10; *Barnes,* 2023 WL 2988346, at *8 (collecting cases). As the above authority confirms, the mere fact that medical providers noted Plaintiff's use of a walker does not establish that such an assistive device was medically necessary for purposes of SSR 96-9p.

As for Plaintiff's use of a cane, the record evidence Plaintiff cites to support the medical necessity of this device is even weaker. At best, there is the apparent 2018 prescription which wholly fails to describe the specific circumstances for its use. There also is Plaintiff's alleged use of a cane as reflected in certain treatment notes. (ECF No. 7 at 8 citing R. at 492, 864, 394-395, 676.) This latter fact, standing alone, does not establish that such an assistive device was medically necessary for purposes of SSR 96-9p. *Drew,* 2024 WL 2294784, at *10; *Barnes,* 2023 WL 2988346, at *8 (collecting cases).

For all of these reasons, the Undersigned finds that the ALJ's conclusion that Plaintiff's use of assistive devices was not medically necessary was supported by substantial evidence. Accordingly, there was no error in the ALJ's decision to omit from the RFC any limitation relating to Plaintiff's use of either a walker or a cane.

### B. Manipulative limitations

Plaintiff's second claimed error is that the ALJ failed to explain why he did not include reasonable limitations relating to the use of Plaintiff's hands. Plaintiff points to numerous difficulties involving his hands and the ALJ's determination that Plaintiff's carpal tunnel syndrome was a severe impairment. Plaintiff objects to the ALJ's finding that Plaintiff has no limitation with respect to fingering, grasping, or feeling or that he is capable of "frequently" handling items with the bilateral upper extremities. In response, the Commissioner argues that Plaintiff does nothing more than cite to evidence which he alleges supports his claim. In reply, Plaintiff reiterates his argument. The Undersigned agrees with the Commissioner. Thus, the

14

Undersigned finds that the ALJ"s RFC determination is supported by substantial evidence as it relates to Plaintiff's manipulative limitations.

Initially, a claimant's RFC is an assessment of "the most [a claimant] can still do despite his limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must assess a claimant's RFC based on all the relevant evidence in a claimant's case file. *Id.* The ALJ is responsible for assessing a claimants RFC based on all of the relevant medical and other evidence. 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c). *See Bingaman v. Commr of Soc. Sec.,* 186 F. Appx 642, 647 (6th Cir. 2006); *Ford v. Commr of Soc. Sec.*, 114 F. Appx 194, 198 (6th Cir. 2004). ALJs are to "consider all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individuals record." SSR 16-3p, 2016 WL 1119029, at *2 (superseding SSR 96-7p). "An administrative law judge is only required to include in the residual functional capacity those limitations he finds credible and supported by the record." *Lipanye v. Commr of Soc. Sec.*, 802 F. Appx 165, 170 (6th Cir. 2020) (citing *Casey v. Secy of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

The claimant is generally responsible for providing the evidence that the Commissioner will use to make an RFC finding. 20 C.F.R. § 404.1512(a)(1); 20 C.F.R. § 404.1545(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."). In addition, the claimant bears the burden of demonstrating an RFC more restrictive than that determined by the ALJ. *See Jordan v. Commr of Soc. Sec.*, 548

F.3d 417, 423 (6th Cir. 2008). The determination of a plaintiff's RFC is entirely within the purview of the ALJ, and "this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Rieder v. Comm'r of Soc. Sec.,* No. 2:20-CV-5858, 2021 WL 5881784, at *5 (S.D. Ohio Dec. 13, 2021), *report and recommendation adopted,* No. 2:20-CV-5858, 2021 WL 6197808 (S.D. Ohio Dec. 30, 2021) (citing *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005)).

Here, contrary to Plaintiff's characterization, the ALJ discussed in detail the relevant medical record relating to Plaintiff's upper extremities. Thus, there is no merit to Plaintiff's claim that the ALJ failed to explain why he did not include limitations for fingering, grasping, feeling or handling. For example, the ALJ cited information from Plaintiff's primary care provider in April 2022, discussing as follows:

> [Plaintiff] also reported pain and numbness in the left hand, and an orthopedic specialist told him he may have carpal tunnel syndrome (Exhibit B6F/26). He was given a brace but did not schedule a follow-up (Exhibit B6F/26). … His EMG and nerve conduction study showed mild-moderate neuropathy at the left wrist with probable carpal tunnel syndrome (Exhibit B4F/1). There was no evidence of median neuropathy at the right wrist or other mononeuropathies, and there were no findings to suggest cervical radiculopathy, brachial plexopathy, or generalized peripheral neuropathy affecting the upper limbs (Exhibit B4F/1). … Thus, findings on examinations, including with respect to strength and sensation, along with the generally mild findings on imaging studies, are not consistent with symptoms or limitations as severe as alleged.

(R. at 26.)

The ALJ further discussed treatment notes from Plaintiff's orthopedic specialist in April 2022, reflecting that

> … [Plaintiff's] pain level was 0/10, but he had a moderate-to-severe pins and needles sensation in the hand (Exhibit B4F/1). On examination, he had mild

16

> tenderness and mild atrophy of the thenar eminence of the right hand (Exhibit B4F/2). Sensation was diminished along the median nerve bilaterally, and he had positive carpal compression, positive Tinel's sign along the median nerve at the wrist, and mildly positive Phalen's sign testing bilaterally (Exhibit B4F/2). Grip strength was slightly reduced at +4/5 bilaterally with a slight decrease in pinch strength when compared to the left side (Exhibit B4F/2). Wrist strength was a normal +5/5 bilaterally, and elbow and forearm range of motion, muscle strength, inspection, and stability were normal bilaterally (Exhibit B4F/2). X-rays of the left hand were normal (Exhibit B4F/3). He was prescribed a carpal tunnel brace (Exhibit B4F/3). In April 2022, the claimant began participating in occupational therapy with complaints of numbness and weakness in the left hand (Exhibit B9F/176). He also reported back pain and walked with a cane (Exhibit B9F/180). On examination, range of motion in the elbow, forearm, wrist, and thumb were within functional limits bilaterally, though he was unable to touch the base of his fifth finger with his left thumb (Exhibit B9F/180-181). Grip strength on the left was 67.3 pounds, lateral pinch was 4 pounds, and palmer pinch was 3 pounds (Exhibit B9F/181). Right hand grip strength was 126.2 pounds with lateral pinch strength of 22 pounds and palmer pinch strength of 20 pounds (Exhibit B9F/181).

(R. at 27.)

Additionally, the ALJ relied on notes from a consultative examination in May 2022 indicating that Plaintiff's

> [m]uscle and grasp strength were well-preserved over the upper extremities, as was sensation (Exhibit B3F/2, 9-10). Manipulative ability was normal bilaterally with no evidence of muscle atrophy (Exhibit B3F/2). Range of motion in the bilateral upper extremities was normal (Exhibit B3F/2, 11-12).

(R. at 27; 28.)

The ALJ also discussed notes from Plaintiff's last occupational therapy visit in July 2022 and a physical therapy appointment in August 2022, which revealed that

> … [Plaintiff] reported that his little finger functioning was a little better, though there was still numbness, and he rated his pain as 0/10 (Exhibit B9F/78). On examination, grip strength on the left was 93 pounds, and range of motion was within normal limits (Exhibit B9F/91). The little finger started to claw as it fatigued, and he would hold his little finger out and tap before he could put it on the gripper to squeeze (Exhibit B9F/91). In July 2022, the claimant began complaining of right

17

>elbow pain for two months (Exhibit B6F/59). He also reported pain radiating to the left shoulder down to the elbow with turning his head (Exhibit B6F/59). It lasted for several days but improved (Exhibit B6F/59). He had not taken any medication for his joint pain (Exhibit B6F/59). On examination, he had only mild pain to palpation and movement of the right elbow with no swelling or redness (Exhibit B6F/62). In August 2022, the claimant participated in a physical therapy evaluation for his right elbow pain, but he did not follow up (Exhibit B9F/45). He complained of intermittent pain with use of the right upper extremity, and he had pain with pronation or in neutral position with no pain with supination (Exhibit B9F/67). He denied numbness and tingling, and he felt that his gripping was without issue (Exhibit B9F/67). On examination, range of motion in the bilateral upper extremities was within functional limits (Exhibit B9F/69). General strength in the bilateral upper extremities was within normal limits with 105 pounds on the right and 75 pounds on the left (Exhibit B9F/69). Right wrist extension and radial deviation was slightly reduced at 4+/5 while right elbow, forearm, and wrist flexion and deviation were a full 5/5 (Exhibit B9F/69).

(R. at 28.)

>Finally, the ALJ reviewed physical therapy notes from late 2022, noting that Plaintiff

>… also had a history of left hand numbness and weakness that improved some with a course of occupational therapy, though he continued to have some residual symptoms (Exhibit B9F/14). On examination, he had some postural deviations, but he demonstrated good cervical and shoulder range of motion (Exhibit B9F/14, 22). Range of motion throughout the bilateral upper extremities was within functional limits while sensation in the bilateral upper extremities was intact. (Exhibit B9F/22).

(R. at 29.) Taking the above into account, the ALJ concluded that Plaintiff's symptoms or limitations were not as severe as alleged and that the reduced range of sedentary work in the RFC fully addressed Plaintiff's pain and related symptoms. (*Id*.)

Plaintiff's argument here fails for several reasons. First, as with Plaintiff's other claimed error, Plaintiff wholly mischaracterizes the record when asserting that the ALJ "[did] not explain why there were no reasonable limitations with the use of [Plaintiff's] hands." (ECF No. 7 at 10.) Moreover, Plaintiff does not allege the ALJ mischaracterized any of the extensive evidence

above. Indeed, at best, Plaintiff cites to a few examples from the medical record which he finds favorable to him, disregarding the breadth of the evidence considered by the ALJ.

Construed fairly, Plaintiff's argument simply invites the Court to reevaluate the evidence. However, even if a preponderance of the evidence supports Plaintiff's position, the Court will not disturb the Commissioner's decision so long as substantial evidence also supports the conclusion the ALJ reached. *O'Brien v. Commissioner of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020). Under this standard, the Court cannot reweigh the evidence or substitute its judgment for that of the ALJ. *Joni W. v. Comm'r of Soc. Sec.*, No. 2:23-CV-2505, 2024 WL 488044, at *7 (S.D. Ohio Feb. 8, 2024). Here, the ALJ's findings are supported by substantial evidence within his "zone of choice." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). Accordingly, the ALJ did not err in declining to include functional limitations for grasping, fingering, feeling or handling.

## VI. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that Plaintiff's Statement of Errors (ECF No. 7) be **OVERRULED,** and that the Commissioner's decision be **AFFIRMED.**

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and forfeiture of the right to appeal the judgment of the District Court.  Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

June 12, 2025                                                                     *s/ Elizabeth A. Preston Deavers*
                                                                       Elizabeth A. Preston Deavers
                                                                       United States Magistrate Judge